[Cite as *State v. Kern*, 2017-Ohio-2904.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                Court of Appeals No. S-16-026

    Appellee                            Trial Court Nos. 14TRD3216
                                          14CRB218

v.

James A. Kern                               **DECISION AND JUDGMENT**

    Appellant                           Decided:  May 19, 2017

* * * * *

Timothy F. Braun, Sandusky County Prosecuting Attorney,
for appellee.

Mark D. Tolles, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Appellant, James Kern, appeals the judgment of the Sandusky County Court,

District No. 2, convicting him following a bench trial of one count of speeding in

violation of R.C. 4511.21(D)(1), a minor misdemeanor, one count of reckless operation

in violation of R.C. 4511.20(A), a minor misdemeanor, one count of failure to control in

violation of R.C. 4511.202(A), a minor misdemeanor, and one count of fleeing and

eluding in violation of R.C. 2921.331(B), a misdemeanor of the first degree. For the reasons that follow, we affirm.

## I. Facts and Procedural Background

{¶ 2} The testimony at trial was largely undisputed, and revealed the following. On May 10, 2014, at approximately 10:30 p.m., Trooper Anthony Scherley with the Ohio State Highway Patrol was heading westbound on U.S. 6 in Sandusky County when he observed a motorcycle approaching him from the opposite direction travelling eastbound. Scherley testified that he checked the motorcycle's speed with his radar and found that the motorcycle was travelling 68 m.p.h. in a 55 m.p.h. zone. As Scherley began to turn his vehicle around, he heard the motorcycle rapidly accelerate. Scherley activated his lights and siren and a high speed chase ensued, during which Scherley approached speeds of 140 m.p.h. in an attempt to catch up with the motorcycle. Scherley observed the motorcycle turn southbound on County Road 26, run through a stop sign, and then turn left to head eastbound on County Road 33. In the distance, Scherley could barely see the motorcycle's taillight when he saw a quick brake light and then it disappeared.

{¶ 3} As Scherley approached the scene on County Road 33, he found the motorcycle laying in the ditch on the edge of the roadway. No one was in the area at that time. Scherley testified that he observed a few drops of blood on the roadway and some riding glasses that also had blood on them. Scherley ran the plates on the motorcycle, and it came back being registered to appellant, who lives on County Road 33, approximately one quarter of a mile from where the motorcycle was found. Scherley also

2.

testified that he found a ticket for a Toledo Mud Hens baseball game for that night with appellant's name printed on it.

{¶ 4} On cross-examination, Scherley testified that he did not see who was driving the motorcycle that night, and could not identify the driver. He further testified that no samples of the blood were taken to be analyzed.

{¶ 5} Captain Michael Meggitt of the Sandusky County Sheriff's Office testified that he responded to the scene with the K-9 unit. Meggitt testified that the dog tracked from the scene north approximately 200 yards into a wooded area where there were some travel trailers. The dog then went west through a path for another several hundred yards, ending up at the back of appellant's residence. Meggitt testified that there was blood on the concrete pad near appellant's garage, as well as a blood smear on the screen door handle into the house. Meggitt knocked on every door, but there was no answer. No further action was taken that night.

{¶ 6} On May 20, 2014, Deputy Eric Arquette of the Sandusky County Sheriff's Office responded to appellant's residence, after appellant called to file a theft report regarding his motorcycle. Arquette testified that when he arrived, he observed an injury to appellant's forehead that "was in various stages of healing." Arquette could not remember whether the injury was consistent with other "road rashes" that he has observed, but that it "could be consistent" with someone who was wearing glasses at the time the injury occurred. Arquette testified that he felt that appellant was filing a false report, and reminded appellant to be truthful. Appellant, however, continued to maintain

3.

that he was not involved in the accident, and that the motorcycle was indeed stolen. Appellant told Arquette that he rode his motorcycle to Toledo to attend the Mud Hens game, left early because it was getting colder, and upon arriving home he parked his motorcycle in the garage.

{¶ 7} After Arquette's testimony, the state rested. Appellant moved for a judgment of acquittal under Crim.R. 29, which the trial court denied. Appellant then called his mother, Linda Kern, as a witness.

{¶ 8} Linda testified on direct examination that on May 10, 2014, appellant came to visit her around 8:30 p.m. She said that she remembered the day because it was Mother's Day weekend and her husband was out of town and she asked appellant to come over because she was lonely. Linda testified that appellant arrived in his pickup truck, not on his motorcycle. The two of them watched a movie and ate tacos, then appellant spent the night. Linda testified that appellant was at her house the entire night.

{¶ 9} The next time Linda saw appellant was on May 20, 2014, when he reported the motorcycle missing. Linda explained that she had been taking care of appellant's house while he was out of town for work, and that while she was mowing his yard on May 20, she noticed that his motorcycle was missing. She testified that appellant told her to contact the police and report the motorcycle stolen. When she called the police, however, she said that they told her that appellant would have to make the report in person. Appellant then drove home to file the report.

4.

{¶ 10} Notably, Linda also testified, on direct examination, that when appellant arrived on May 10, 2014, he had a cut on his head. Linda testified that appellant told her that he had cut his head earlier in the week at work. On redirect examination, however, Linda testified that she did not notice the cut until May 20, 2014, when appellant came home after she told him that his motorcycle was missing.

{¶ 11} Lastly, appellant testified in his own defense. Appellant testified that on May 10, 2014, he rode his motorcycle to a Toledo Mud Hens game, but left early and went home. He then drove his truck over to his mother's house around 8:30 p.m. where they watched a movie and ate Mexican food. Appellant spent the night at his mother's house.

{¶ 12} Appellant testified that he did not have any injuries when he came home from work on Friday, May 9. Rather, appellant testified that he was injured on May 13, 2014, when he walked into some sheet metal. He testified that there were pictures of his injury, but he did not file a workplace incident report.

{¶ 13} Appellant also testified that in November 2014, one of his friends confessed to appellant that he was the one who had taken appellant's motorcycle out for a joy ride on May 10, 2014. Instead of conveying this information to the police, appellant told his attorney. The friend was not called to testify at the trial, however, because appellant testified that the friend, whom he described as a very troubled man, had committed suicide.

5.

**{¶ 14}** Following the presentation of the evidence, the trial court found appellant guilty on all counts. Appellant was sentenced on May 25, 2016, to 90 days in jail with 87 of those days suspended, and was ordered to pay a fine and costs.

## II. Assignments of Error

**{¶ 15}** Appellant has timely appealed his judgments of conviction, asserting four assignments of error for our review:

1. The trial court erred in allowing Deputy Arquette to testify relative to the cause of injuries since there was not any foundation for his opinion.

2. The trial court erred in overruling the motion for a judgment of acquittal where there was no evidence presented relative to the officer's training on the use of any speed detection device, the device was not identified, and there was no indication that the device used was in proper working order.

3. The trial court erred in overruling the motion for a judgment of acquittal where the evidence of a chase did not indicate any underlying traffic offense as indicated in assignment of error No. 2, supra.

4. The conviction of defendant-appellant James A. Kern was against the manifest weight of the evidence presented at trial.

6.

## III. Analysis

{¶ 16} In his first assignment of error, appellant argues that Arquette should not have been permitted to testify that he observed an injury to appellant's forehead that was "in various stages of healing." Appellant argues that Arquette never indicated that he had any knowledge regarding the healing of injuries over time, and thus was not competent to testify to injuries, or to speculate that the injury had occurred on a certain date.

{¶ 17} "The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 43. An abuse of discretion connotes that the trial court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 18} Evid.R. 701 provides, "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 19} Here, we note that Arquette did not speculate as to the date of the injury, nor did he give testimony as to what he believed was the cause of the injury as he testified that he could not remember if the injury was consistent with a "road rash"—an injury sustained when skin rubs along asphalt or concrete during a crash. Rather, his testimony was limited to the fact that the injury was healing. The ability to conclude that

7.

a skin injury is in the process of healing is well within the knowledge or experience possessed by lay persons. Specifically, we find that Arquette's opinion that the injury was healing was rationally based on his perception of the injury, and was helpful in determining whether appellant was the operator of the motorcycle on May 10, 2014. Thus, we find that the trial court did not abuse its discretion when it overruled appellant's objection to Arquette's testimony.

{¶ 20} Accordingly, appellant's first assignment of error is not well-taken.

{¶ 21} In his second assignment of error, appellant challenges the trial court's failure to grant his Crim.R. 29(A) motion for acquittal pertaining to his conviction for speeding in violation of R.C. 4511.21(D)(1), which provides that "No person shall operate a motor vehicle * * * upon a street or highway as follows: (1) At a speed exceeding fifty-five miles per hour, except upon a two-lane state route as provided in division (B)(10) of this section and upon a highway, expressway, or freeway as provided in divisions (B)(13), (14), (15), and (17) of this section." Appellant argues that the evidence is insufficient to support the conviction because Scherley did not testify as to the calibration or accuracy of the radar used or Scherley's training or experience with the radar used, nor did Scherley testify regarding his training or certification to make a visual estimation of speed.

{¶ 22} "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence." *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

8.

In reviewing a conviction for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 23} Here, we note that appellant did not object at any time to Scherley's testimony regarding his observation that the motorcycle was traveling above the posted speed, that he recorded the motorcycle going 68 m.p.h. on his radar, that the motorcycle rapidly accelerated and was then going at a "high rate of speed," or that he reached speeds of 140 m.p.h. attempting to catch up to the motorcycle. Thus, appellant has waived all but plain error regarding the admissibility of this testimony. *State v. Hartman*, 93 Ohio St.3d 274, 281, 754 N.E.2d 1150 (2001). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In this case, we do not find that these are exceptional circumstances or that a manifest miscarriage of justice would result from the admission of Scherley's testimony. Thus, because Scherley's testimony regarding the speed at which appellant was traveling was in evidence, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the motorcycle was going above the posted speed limit. Therefore, we hold that the trial court did not err in denying appellant's Crim.R. 29(A) motion for acquittal on the charge of speeding.

{¶ 24} Accordingly, appellant's second assignment of error is not well-taken.

9.

{¶ 25} In his third assignment of error, appellant challenges the trial court's failure to grant his Crim.R. 29(A) motion for acquittal on the other charges of reckless operation, failure to control, and fleeing and eluding. We find appellant's arguments to be without merit.

{¶ 26} Relevant to the charge of reckless operation, R.C. 4511.20(A) provides, "No person shall operate a vehicle * * * on any street or highway in willful or wanton disregard of the safety of persons or property." Appellant argues that the evidence does not support his conviction because it takes great skill for a rider to take right-angle turns at 68 m.p.h. without crashing. However, while we note that appellant does not consider that the rider of the motorcycle may have braked before executing the turns, we find that appellant completely disregards Scherley's testimony that the motorcycle ran through a stop sign at a high rate of speed without stopping. We conclude that such conduct is sufficient to support a finding of willful or wanton disregard of the safety of persons.

{¶ 27} As to the charge of failure to control, R.C. 4511.202(A) states, "No person shall operate a motor vehicle * * * on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle." Appellant surmises that relative to the location where the motorcycle was found, an intervening object such as an animal or nocturnal bird may have caused the rider of the motorcycle to hit the brakes briefly and then, realizing that he had been hit by the animal, set the bike down. Appellant's speculation, however, is in contravention to the standard requiring us to view the evidence in the light most favorable to the prosecution. In that light, a

10.

reasonable fact finder could conclude that the operator lost control of the motorcycle and crashed based on Scherley's testimony that the brake light flashed then disappeared, and the fact that the motorcycle was found lying on its side in the ditch on the side of the road with droplets of blood scattered around on the pavement. Therefore, we hold that the evidence is sufficient to support a conviction for failure to control.

{¶ 28} Regarding the charge of fleeing and eluding, R.C. 2921.331(B) provides, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Appellant argues that a question exists regarding whether the operator of the motorcycle could see and hear the lights and siren from the police cruiser, and whether he would realize that the lights and siren were directed at him. Here, the testimony indicates that the motorcycle passed a marked police car. Once Scherley began turning his car around, the motorcycle took off at a high rate of speed, at which point Scherley activated his lights and siren. Thereafter, the motorcycle continued travelling at a high rate of speed as Scherley continued the chase. Viewing this evidence in the light most favorable to the prosecution, we hold that a reasonable trier of fact could conclude that the operator of the motorcycle was aware that he was being pursued by a state highway patrol trooper as he continued to flee. Thus, the charge of fleeing and eluding is supported by sufficient evidence.

{¶ 29} Finally, appellant argues that as to all of the charges, the evidence was insufficient to demonstrate that he was the operator of the motorcycle. Again, we

disagree. Here, the motorcycle was registered to appellant, and contained a ticket from a baseball game that night with appellant's name printed on it. Further, there were drops of blood around the scene of the accident, and on riding glasses that were also found at the scene. In addition, a K-9 unit tracked from the scene to appellant's house, where more drops of blood were discovered. Then, ten days later, Arquette observed an injury to appellant's forehead that was in the process of healing. Based on this evidence, a reasonable trier of fact could have concluded that appellant was the person operating the motorcycle. Therefore, we hold that the trial court did not err in denying appellant's Crim.R. 29 motion for acquittal on the charges of reckless operation, failure to control, and fleeing and eluding.

{¶ 30} Accordingly, appellant's third assignment of error is not well-taken.

{¶ 31} In his fourth assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. In reviewing a conviction as being against the manifest weight of the evidence, the court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

12.

{¶ 32} Appellant presents no argument in support of his fourth assignment of error, relying on "the reasons as set forth in the preceding assignments of error." Regardless, we find that his convictions are not against the manifest weight of the evidence. In support of his innocence, appellant presented the alibi testimony of his mother, and his own testimony that a now deceased friend confessed to appellant that he stole the motorcycle and crashed it. However, appellant's mother provided contradictory testimony regarding when the injury to appellant occurred, first testifying that the injury was present on May 10, 2014, while he was at her house, and then testifying that she noticed it for the first time on May 20, 2014. We also find appellant's testimony to be less than credible given that appellant's friend purportedly confessed to him in November 2014, appellant told the information to his attorney, and yet no one reported it to the police. Thus, we find that this is not the exceptional case in which the evidence weighs heavily against the conviction and the trial court did not clearly lose its way and create a manifest miscarriage of justice in finding appellant guilty. Therefore, we hold that appellant's convictions are not against the manifest weight of the evidence.

{¶ 33} Accordingly, appellant's fourth assignment of error is not well-taken.

## {¶ 34} IV. Conclusion

{¶ 35} For the foregoing reasons, we find that substantial justice has been done the party complaining, and the judgment of the Sandusky County Court, District No. 2, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

13.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Arlene Singer, J.

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE